

 

## REGIONAL SALES CONTRACT

This SALES CONTRACT ("Contract") is made on _____**September 2, 2014**_____ ("Contract Date") between
_____**Clifford C. Wong, Adebessi C. Wong**_____ ("Purchaser") and
_____**Shih F. Kang, Jing Ying Kang**_____ ("Seller") who, among other
things, hereby confirm and acknowledge by their initials and signatures herein that by prior disclosure in this real estate
transaction _____**Libra Realty**_____ ("Listing Company") represents
Seller, and _____**Heymann Realty, LLC**_____ ("Selling Company") represents
[X] Purchaser OR [ ] Seller. The Listing Company and Selling Company are collectively referred to as "Broker". (If the
brokerage firm is acting as a dual representative for both Seller and Purchaser, then the appropriate disclosure form is
attached to and made a part of this Contract.) In consideration of the mutual promises and covenants set forth below, and
other good and valuable consideration the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. **REAL PROPERTY** Purchaser will buy and Seller will sell for the sales price ("Sales Price"), Seller's entire interest in
   the real property (with all improvements, rights and appurtenances) described as follows ("Property"):
   TAX Map/ID # **161302834895**_____ Legal Description: Lot(s) **P82**_____ Block/Square **P82**_____
   Section _____ Subdivision or Condominium **Norbeck Hills**_____
   Parking Space(s) # **n/a**_____ County/Municipality **Montgomery**_____ **Silver Spring**
   Deed Book/Liber # _____ Page/Folio # _____
   Street Address **15208 Baileys Lane**_____
   Unit # _____ City **Silver Spring**_____ State **MD** Zip Code **20906**_____

2. **JURISDICTIONAL ADDENDUM** The following Jurisdictional Addendum, if ratified and attached, is made a part of
   this Contract. Jurisdictional Addendum for [ ] DC [ ] VA [X] MD/County: **Montgomery**_____
   [ ] Other: _____

3. **PRICE AND FINANCING**

   **A. Down Payment** $ _____ 18,725.00

   **B. Financing**   1. First Trust (if applicable)   $ _____ 516,275.00

   2. Second Trust (if applicable)   $ _____

   3. Seller Held Trust
   Addendum attached (if applicable)   $ _____

   TOTAL FINANCING   $ _____ 516,275.00

   SALES PRICE   $ _____ 535,000.00

   **C. First Deed of Trust** Purchaser will [X] Obtain OR [ ] Assume a [ ] Fixed OR an [ ] Adjustable rate First Deed
   of Trust loan of the following type:

   [ ] Conventional   See Addendum Attached   [ ] VA   See Addendum Attached
   [X] FHA   See Addendum Attached   [ ] Other: _____
   [ ] This contract is not contingent on Financing.

   **D. Second Deed of Trust** Purchaser will [ ] Obtain OR [ ] Assume a [ ] Fixed OR an [ ] Adjustable rate Second
   Deed of Trust loan.

   **E. Assumption Only** Assumption fee, if any, and all charges related to the assumption will be paid by the Purchaser.
   If Purchaser assumes Seller's loan(s): (i) Purchaser and Seller [ ] will, OR [ ] will not obtain a release of Seller's
   liability to the U.S. Government for the repayment of the loan by Settlement, (ii) Purchaser and Seller [ ] will, OR
   [ ] will not obtain substitution of Seller's VA entitlement by Settlement. Balances of any assumed loans, secondary
   financing and cash down payments are approximate.

1.

4. <u>DEPOSIT</u> Purchaser has delivered a deposit ("Deposit") to _____ Heymann Realty, LLC _____ ("Escrow Agent") of ☒ $ 2,000.00 _____ check and/or ☐ $ _____ by note due and payable on _____.

The Deposit will be placed in an escrow account of the Escrow Agent after Date of Ratification in conformance with the laws and regulations of the appropriate jurisdiction and/or, if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and all parties waive any claim to interest resulting from the Deposit. The Deposit will be held in escrow until: (i) Credited toward the Sales Price at Settlement; (ii) All parties have agreed in writing as to its disposition; (iii) A court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) Disposed of in any other manner authorized by the laws and regulations of the appropriate jurisdiction. Seller and Purchaser agree that Escrow Agent will have no liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except in the event of the Escrow Agent's gross negligence or willful misconduct.

5. <u>DOWN PAYMENT</u> The balance of the down payment will be paid on or before the Settlement Date by certified or cashier's check or by bank-wired funds. An assignment of funds shall not be used without prior written consent of Seller.

6. <u>SETTLEMENT</u> Seller and Purchaser will make full settlement in accordance with the terms of this Contract ("Settlement") on, or with mutual consent before, _____ December 15, 2014 _____ ("Settlement Date") except as otherwise provided in this Contract. Purchaser selects: Avalon Settlements, Silver Spring, MD 20903 _____ ("Settlement Agent") to conduct the Settlement. (For transactions in Virginia, use the Virginia Jurisdictional Addendum to select the Settlement Agent.) Either party may retain their own legal counsel. Purchaser agrees to contact the Settlement Agent within 10 Days after the Date of Ratification to schedule Settlement and to arrange for ordering the title exam and, if required, a survey.

7. <u>PROPERTY MAINTENANCE AND CONDITION</u> Except as otherwise specified herein, Seller will deliver the Property free and clear of trash and debris, broom clean and in substantially the same physical condition to be determined as of ☐ Contract Date OR ☒ Date of home inspection OR ☐ Other: _____ . Seller will have all utilities in service through Settlement or as otherwise agreed. Purchaser and Seller will not hold the Broker liable for any breach of this paragraph.

Purchaser acknowledges, subject to Seller acceptance, that this Contract may be contingent upon home inspection(s) and/or other inspections to ascertain the physical condition of the Property. If Purchaser desires one or more inspection contingencies, such contingencies must be included in an addendum to this Contract.
☒ This Contract is contingent upon home inspection(s) and/or other inspections. (Addendum Attached)
   OR
☐ Purchaser declines the opportunity to make this Contract contingent upon home inspection(s) and/or other inspections.

Purchaser acknowledges that except as otherwise specified in this Contract, the Property, including electrical, plumbing, existing appliances, heating, air conditioning, equipment and fixtures shall convey in its AS-IS condition as of the date specified above.

8. <u>ACCESS TO PROPERTY</u> Seller will provide the Broker, Purchaser, inspectors representing Purchaser and representatives of lending institutions for Appraisal purposes reasonable access to the Property to comply with this Contract. In addition, Purchaser and/or Purchaser's representative will have the right to make a final inspection within 5 days prior to Settlement and/or occupancy, unless otherwise agreed to by Purchaser and Seller.

9. <u>UTILITIES</u> - WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING (Check all that apply)
Water Supply: ☒ Public ☐ Private Well        ☐ Community Well
Sewage Disposal: ☒ Public ☐ Septic for # BR _____ ☐ Community Septic ☐ Alternative Septic for # BR: _____
Hot Water: ☐ Oil ☒ Gas ☐ Elec. ☐ Other _____

2.

Air Conditioning: ☐ Oil    ☐ Gas    ☒ Elec.    ☐ Heat Pump    ☐ Other _____    ☐ Zones _____
Heating:    ☐ Oil    ☒ Gas    ☐ Elec.    ☐ Heat Pump    ☐ Other _____    ☐ Zones _____

**10. PERSONAL PROPERTY AND FIXTURES** The Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, TV antennas, exterior trees and shrubs. Unless otherwise agreed to in writing, all surface or wall mounted electronic components/devices **DO NOT** convey. If more than one of an item convey, the number of items is noted.

**The items marked YES below are currently installed or offered.**

| Yes | No | # | Items | Yes | No | # | Items | Yes | No | # | Items |
|-----|-----|-----|-------|-----|-----|-----|-------|-----|-----|-----|-------|
| ☐ | ☒ | ____ | Alarm System | ☐ | ☒ | ____ | Freezer | ☐ | ☒ | ____ | Satellite Dish |
| ☒ | ☐ | ____ | Built-in Microwave | ☐ | ☒ | ____ | Furnace Humidifier | ☐ | ☒ | ____ | Storage Shed |
| ☒ | ☐ | 1 | Ceiling Fan | ☒ | ☐ | ____ | Garage Opener | ☒ | ☐ | ____ | Stove or Range |
| ☐ | ☒ | ____ | Central Vacuum | ☐ | ☐ | ____ | w/ remote | ☐ | ☒ | ____ | Trash Compactor |
| ☒ | ☐ | ____ | Clothes Dryer | ☐ | ☒ | ____ | Gas Log | ☐ | ☒ | ____ | Wall Oven |
| ☒ | ☐ | ____ | Clothes Washer | ☐ | ☒ | ____ | Hot Tub, Equip. & Cover | ☐ | ☒ | ____ | Water Treatment System |
| ☒ | ☐ | ____ | Cooktop | ☐ | ☒ | ____ | Intercom | ☐ | ☒ | ____ | Window A/C Unit |
| ☒ | ☐ | ____ | Dishwasher | ☐ | ☒ | ____ | Playground Equipment | ☐ | ☒ | ____ | Window Fan |
| ☐ | ☒ | ____ | Disposer | ☐ | ☒ | ____ | Pool, Equip. & Cover | ☒ | ☐ | ____ | Window Treatments |
| ☐ | ☒ | ____ | Electronic Air Filter | ☒ | ☐ | ____ | Refrigerator | ☐ | ☐ | ____ | Wood Stove |
| ☒ | ☐ | ____ | Fireplace Screen/Door | ☒ | ☐ | ____ | w/ ice maker | | | | |

OTHER _____

**LEASED ITEMS** Any leased items, systems or service contracts (including, but not limited to, fuel tanks; water treatment systems, lawn contracts, security system monitoring, and satellite contracts) **DO NOT** convey absent an express written agreement by Purchaser and Seller. The following is a list of the leased items within the Property:

_____
_____
_____

**11. FINANCING APPLICATION** If this Contract is contingent on financing, Purchaser will make written application for the Specified Financing and any lender required property insurance no later than 7 days after the Date of Ratification. Purchaser grants permission for the Selling Company and the lender to disclose to the Listing Company and the Seller general information available about the progress of the loan application and loan approval process. If Purchaser fails to settle except due to any Default by Seller, then the provisions of the DEFAULT paragraph shall apply. Seller agrees to comply with reasonable lender requirements, except as otherwise provided in the LENDER REQUIRED REPAIRS paragraph of the applicable financing contingency addendum.

**12. ALTERNATE FINANCING** Purchaser may substitute alternative financing and/or an alternative lender for Specified Financing provided: (a) Purchaser is qualified for alternative financing; (b) there is no additional expense to Seller; (c) the Settlement Date is not delayed; and (d) if Purchaser fails to settle except due to any Default by Seller, then the provisions of the DEFAULT paragraph shall apply.

**13. PURCHASER'S REPRESENTATIONS** Purchaser ☒ will, OR ☐ will not occupy the Property as Purchaser's principal residence. **Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property.** The Selling Company ☒ is, OR ☐ is not authorized to disclose to the Listing Company, Seller and any lender the appropriate financial or credit information statement provided to the Selling Company by Purchaser. Purchaser acknowledges that Seller is relying upon all of Purchaser's representations, including without limitation, the accuracy of financial or credit information given to Seller, Broker or the lender by Purchaser.

3.

14. **TERMITE INSPECTION** The ☒ Purchaser at Purchaser's expense OR ☐ Seller at Seller's expense, will furnish a written report from a pest control firm dated not more than 30 days prior to Settlement showing that all dwelling(s) and/or garage(s) within the Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) are free of visible evidence of active termites and other wood-destroying insects, and free from visible insect damage. Any extermination and repairs for damage identified in the inspection report will be made at Seller's expense.

15. **DAMAGE OR LOSS** The risk of damage or loss to the Property by fire, act of God, or other casualty remains with Seller until the execution and delivery of the deed of conveyance to Purchaser at Settlement.

16. **TITLE** The title report and survey, if required, will be ordered promptly and, if not available on the Settlement Date, then Settlement may be delayed for up to 10 business days to obtain the title report and survey after which this Contract, at the option of Seller, may be terminated and the Deposit will be refunded in full to Purchaser according to the terms of the DEPOSIT paragraph. Fee simple title to the Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by Purchaser. Title is to be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any; otherwise, Purchaser may declare this Contract void, unless the defects are of such character that they may be remedied within 30 Days beyond the Settlement Date. In case action is required to perfect the title, such action must be taken promptly by Seller at Seller's expense. The Broker is hereby expressly released from all liability for damages by reason of any defect in the title. Seller will convey the Property by general warranty deed with English covenants of title (Virginia); general warranty deed (West Virginia); special warranty deed (D.C. and Maryland) ("Deed"). Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lenders. The manner of taking title may have significant legal and tax consequences. Purchaser is advised to seek the appropriate professional advice concerning the manner of taking title. Unless otherwise agreed to in writing, Seller will pay any special assessments and will comply with all orders or notices of violations of any county or local authority, condominium unit owners' association, homeowners' or property owners' association or actions in any court on account thereof, against or affecting the Property on the Settlement Date.

17. **POSSESSION DATE** Unless otherwise agreed to in writing between Seller and Purchaser, Seller will give possession of the Property at Settlement, including delivery of keys, if any. If Seller fails to do so and occupies the Property beyond Settlement, Seller will be a tenant at sufferance of Purchaser and hereby expressly waives all notice to quit as provided by law. Purchaser will have the right to proceed by any legal means available to obtain possession of the Property. Seller will pay any damages and costs incurred by Purchaser including reasonable attorney fees.

18. **FEES** Fees for the preparation of the Deed, that portion of the Settlement Agent's fee billed to Seller, costs of releasing existing encumbrances, Seller's legal fees and any other proper charges assessed to Seller will be paid by Seller. Fees for the title exam (except as otherwise provided), survey, recording (including those for any purchase money trusts) and that portion of the Settlement Agent's fee billed to Purchaser, Purchaser's legal fees and any other proper charges assessed to Purchaser will be paid by Purchaser. Fees to be charged will be reasonable and customary for the jurisdiction in which the Property is located. (Recording, Transfer and Grantor's Taxes are covered in the appropriate jurisdictional addenda).

19. **BROKER'S FEE** Seller irrevocably instructs the Settlement Agent to pay the Broker compensation ("Broker's Fee") at Settlement as set forth in the listing agreement and to disburse the compensation offered by the Listing Company to the Selling Company in writing as of the Contract Date, and the remaining amount of Broker's compensation to the Listing Company.

20. **ADJUSTMENTS** Rents, taxes, water and sewer charges, front foot benefit and house connection charges, condominium unit owners' association, homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the day of Settlement. Any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of Purchaser, unless leased. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the collector of taxes, if any, except that

GCAAR Form # 1301 - Regional Sales Contract - Rev 01/12        Page 4 of 8        Initials: Seller: SK/JK Purchaser: CW/AW
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com        Clifford and

4.

recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by Seller or allowance made at Settlement. If a loan is assumed, interest will be adjusted to the Settlement Date and Purchaser will reimburse Seller for existing escrow accounts, if any.

21. **ATTORNEY'S FEES**

   A. If any Party breaches this Agreement and a non-breaching Party retains legal counsel to enforce its rights hereunder, the non-breaching Party shall be entitled to recover against the breaching Party, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto. Should any tribunal of competent jurisdiction determine that more than one party to the dispute has breached this Agreement, then all such breaching Parties shall bear their own costs, unless the tribunal determines that one or more parties is a "Substantially Prevailing Party", in which case any such Substantially Prevailing Party shall be entitled to recover from any of the breaching parties, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto.

   B. In the event a dispute arises resulting in the Broker (as used in this paragraph to include any agent, licensee, or employee of the Broker) being made a party to any litigation by the Purchaser or by the Seller, the Parties agree that the Party who brought the Broker into litigation shall indemnify the Broker for all of its reasonable Legal Expenses incurred, unless the litigation results in a judgment against the Broker.

22. **PERFORMANCE** Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

23. **DEFAULT** If Purchaser fails to complete Settlement for any reason other than Default by Seller, at the option of Seller, the Deposit may be forfeited as liquidated damages (not as a penalty) in which event Purchaser will be relieved from further liability to Seller. If Seller does not elect to accept the Deposit as liquidated damages, the Deposit may not be the limit of Purchaser's liability in the event of a Default. If the Deposit is forfeited, or if there is an award of damages by a court or a compromise agreement between Seller and Purchaser, the Broker may accept and Seller agrees to pay the Broker one-half of the Deposit in lieu of the Broker's Fee, (provided Broker's share of any forfeited Deposit will not exceed the amount due under the listing agreement). If Seller fails to perform or comply with any of the terms and conditions of this Contract or fails to complete Settlement for any reason other than Default by Purchaser, Purchaser will have the right to pursue all legal or equitable remedies, including specific performance and/or damages. If either Seller or Purchaser refuses to execute a release of Deposit ("Release") when requested to do so in writing and a court finds that such party should have executed the Release, the party who so refused to execute the Release will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation. Seller and Purchaser agree that no Escrow Agent will have any liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except only in the event of the Escrow Agent's gross negligence or willful misconduct. The parties further agree that the Escrow Agent will not be liable for the failure of any depository in which the Deposit is placed and that Seller and Purchaser each will indemnify, defend and save harmless the Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse the Deposit, except in the case of the Escrow Agent's gross negligence or willful misconduct. If either Purchaser or Seller is in default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for the title examination, Appraisal, survey and the Broker's Fee in full.

24. **OTHER DISCLOSURES** Purchaser and Seller should carefully read this Contract to be sure that the terms accurately express their respective understanding as to their intentions and agreements. The Broker can counsel on real estate matters, but if legal advice is desired by either party, such party is advised to seek legal counsel. Purchaser and Seller are further advised to seek appropriate professional advice concerning the condition of the Property or tax and insurance matters. The following provisions of this paragraph disclose some

matters which the parties may investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the following disclosures:

A. **PROPERTY CONDITION** Various inspection services and home warranty insurance programs are available. The Broker is not advising the parties as to certain other issues, including without limitation: water quality and quantity (including but not limited to, lead and other contaminants;) sewer or septic; soil condition; flood hazard areas; possible restrictions of the use of the Property due to restrictive covenants, zoning, subdivision, or environmental laws, easements or other documents; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including but without limitation flame retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), mold, polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, Defective Chinese drywall, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

B. **LEGAL REQUIREMENTS** All contracts for the sale of real property must be in writing to be enforceable. Upon ratification and Delivery, this Contract becomes a legally binding agreement. Any changes to this Contract must be made in writing for such changes to be enforceable.

C. **FINANCING** Mortgage rates and associated charges vary with financial institutions and the marketplace. Purchaser has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract. The financing may require substantial lump sum (balloon) payments on the due dates. Purchaser has not relied upon any representations regarding the future availability of mortgage money or interest rates for the refinancing of any such lump sum payments.

D. **BROKER** Purchaser and Seller acknowledge that the Broker is being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, mold or air quality expert, home inspector or other professional service provider. The Broker may from time to time engage in the general insurance, title insurance, mortgage loan, real estate settlement, home warranty and other real estate-related businesses and services. Therefore, in addition to the Broker's Fee specified herein, the Broker may receive compensation related to other services provided in the course of this transaction pursuant to the terms of a separate agreement/disclosure.

E. **PROPERTY TAXES** Your property tax bill could substantially increase following settlement. For more information on property taxes contact the appropriate taxing authority in the jurisdiction where the Property is located.

F. **PROPERTY INSURANCE** Obtaining property insurance is typically a requirement of the lender in order to secure financing. Insurance rates and availability are determined in part by the number and nature of claims and inquiries made on a property's policy as well as the number and nature of claims made by a prospective Purchaser. Property insurance has become difficult to secure in some cases. Seller should consult an insurance professional regarding maintaining and/or terminating insurance coverage.

25. <u>ASSIGNABILITY</u> This Contract may not be assigned without the written consent of Purchaser and Seller. If Purchaser and Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

26. <u>DEFINITION</u>
   A. "Appraisal" means a written appraised valuation of the Property.
   B. "Day(s)" or "day(s)" means calendar day(s) unless otherwise specified in this Contract.
   C. All reference to time of day shall refer to the time of day in the Eastern Time Zone of the United States.
   D. For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9 p.m. on the Day specified. If the Settlement Date falls on a Saturday, Sunday, or legal holiday, then the Settlement will be on the prior business day.

E. "Date of Ratification" means the date of final acceptance in writing by Purchaser and Seller, of all the terms of this Contract (not the date of expiration or removal of any contingencies).

F. For "Delivery" and "Notices" definitions, see appropriate Jurisdictional Addendum.

G. "Specified Financing" means the loan type(s) and amount(s), if any, specified in the PRICE AND FINANCING paragraph.

H. The masculine includes the feminine and the singular includes the plural.

I. "Possession Date" - See POSSESSION DATE paragraph.

J. "Legal Expenses" means attorney fees, court costs, and litigation expenses, if any, including, but not limited to, expert witness fees and court reporter fees.

27. <u>MISCELLANEOUS</u> This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Documents obtained via facsimile machines will also be considered as originals. Typewritten or handwritten provisions included in this Contract will control all pre-printed provisions that are in conflict.

28. <u>VOID CONTRACT</u> If this Contract becomes void and of no further force and effect, without Default by either party, both parties will immediately execute a release directing that the Deposit be refunded in full to Purchaser according to the terms of the DEPOSIT paragraph.

29. <u>HOME WARRANTY</u>   [X] Yes OR [ ] No
Home Warranty Policy paid for and provided at Settlement by: [X] Purchaser or [X] Seller.
Cost not to exceed $ 415.00 . Warranty provider to be 1-yr HMS to be pd by Buyer Agn .

30. TIME IS OF THE ESSENCE AS TO ALL TERMS OF THIS CONTRACT.

31. <u>ENTIRE AGREEMENT</u> This Contract will be binding upon the parties and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions not satisfied at Settlement will survive the delivery of the deed and will not be merged therein. This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of this Contract will be governed by the laws of the jurisdiction where the Property is located.

32. <u>ELECTRONIC SIGNATURES</u> In accordance with the Uniform Electronic Transactions Act (UETA) and the Electronic Signatures in Global and National Commerce Act, or E-Sign (the Act), and other applicable local or state legislation regarding Electronic Signatures and Transactions, the parties do hereby expressly authorize and agree to the use of electronic signatures as an additional method of signing and/or initialing this Contract. The parties hereby agree that either party may sign electronically by utilizing a digital signature service.

Seller: SK / JK   Purchaser: CCW / ABW

**SELLER:**

09/09/14 / _Shih Kang_
Date      Signature
          Shih F. Kang

09/09/14 / _Jing Ying Kang_
Date      Signature
          Jing Ying Kang

**PURCHASER:**

9/4/14 / _Clifford C. Wong_
Date     Signature
         Clifford C. Wong

9/4/14 / _Adebessi B. Wong_
Date     Signature
         Adebessi C. Wong

Date of Ratification (see DEFINITIONS)
9/9/2014

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

For information purposes only:
Listing Company's Name and Address:

Libra Realty
12739 York Mill Lane
Clarksburg, MD   20871

Office # (301)972-5588   FAX # (888)988-1788

MRIS Broker Code and Office ID LRL 1

Agent Name Peter Yin

_____
Real Estate License Number & Jurisdiction

Agent MRIS ID# 117723

Team Leader/Agent _____

Agent Email Address peter@librarealty.com

Selling Company's Name and Address:

Heymann Realty, LLC
10230 New Hampshire Ave, Ste 102
Silver Spring, MD   20906

Office # (301)439-1180   FAX # (301)439-1190

MRIS Broker Code and Office ID HEYR1

Agent Name Joy Nebblett

65090   MD
Real Estate License Number & Jurisdiction

Agent MRIS ID# 9638

Team Leader/Agent _____

Agent Email Address joynebblett@mris.com



©2012. This is a suggested form owned by certain REALTOR® Associations ("Associations"). This form has been created and printed exclusively for the use of REALTORS® and members of the Associations, who may copy or otherwise reproduce this form in identical form with the addition of their company logo and with any other changes being set forth in a clearly marked separate addendum. Any other use of this form is prohibited without prior written authorized consent of the Associations.



GCAAR Form # 1301 - Regional Sales Contract - Rev 01/12      Page 8 of 8

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      Clifford and

8.